UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TODD JEUDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-cv-989-MTS |
| ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Todd Jeude brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. Doc. [2]. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $30. *See* 28 U.S.C. § 1915(b)(1). Also before this Court is Plaintiff's motion to amend with an attached proposed amended complaint. Doc. [19]. As amendment should be freely given, the Court will grant Plaintiff's motion to amend and his amended complaint will be docketed in this matter. Based on an initial review under 28 U.S.C. § 1915(e)(2)(B) of Plaintiff's amended complaint, the Court will dismiss this case for failure to state a claim upon which relief may be granted.

**Motion to Proceed *In Forma Pauperis* (Doc. [2]) and Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff is currently a detainee at the Ste Genevieve County Jail.  Doc. [1] at 3.  In his signed and sworn motion to proceed without prepayment of fees and costs, Plaintiff states that he is not currently employed.  Doc. [2-1] at 2.  Plaintiff requested, but never received, a certified prison account statement from the Ste Genevieve County Jail.  *Id.* at 5-6.  However, he did submit his own summary of his prison account statement.  Doc. [3].  Plaintiff states that he receives an average of $250 a month in gifts from family and friends, but in one month he only received $150 and he currently only has $48 in his prison account.  *Id.* at 1.  The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire filing fee.  Based on the financial information Plaintiff has submitted, the Court will assess an initial partial filing fee of $30, which is twenty percent of Plaintiff's lowest month's deposit.  *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances.").  If Plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

**Motion to Amend Complaint (Doc. [19])**

Self-represented Plaintiff initiated this action on September 21, 2022, by filing his § 1983 complaint.  Doc [1].  Over the subsequent three months, Plaintiff filed various discovery motions which were denied by the Court as premature on December 27, 2022.  Doc. [18].  On December 30, 2022, Plaintiff filed a motion to amend his initial complaint with an attached amended

complaint. Doc. [19]. As leave to amend should be freely given, the Court will grant Plaintiff's motion to amend and direct the Clerk of Court to docket separately the amended complaint in this matter. Because the filing of an amended complaint completely replaces the original complaint, the Court will only review Plaintiff's amended complaint in this matter. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible

claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Amended Complaint

Plaintiff is currently being held at the Ste Genevieve County Jail but the allegations of his complaint involve a period of detention at the St. Louis City Justice Center ("SLCJC"). Plaintiff brings this action under 42 U.S.C. § 1983 and Missouri state medical malpractice law, alleging violations of his civil rights against an indeterminate number of officials employed at the SLCJC.[1] Doc. [19-2] at 1-7. The individually named defendants are: (1) Adrian Barnes (superintendent); (2) Dr. Brenda Mallard (medical administrator); (3) Captain Unknown Hall (supervisor and commander); (4) Unknown Barnes (correctional officer);[2] and (5) Unknown Smith (correctional officer). *Id.* at 5-7. Plaintiff names defendants CO Barnes and Smith in their individual capacities only, and defendants Barnes, Dr. Mallard, and Hall in both their official and individual capacities. *Id.* Plaintiff also names an indeterminate number of Doe defendants in their individual capacities. *Id.* at 3, 7.

Plaintiff describes himself both as a "pre-trial detainee on a USMS hold" and a "convicted felon serving a 7-year sentence out of the Circuit County of St. Louis County Missouri [expiring] … 10-8-23." *Id.* at 5, 9. Plaintiff was booked into SLCJC on July 6, 2022, "on a Missouri Board of Probation and Parole [] hold," after being injured in an ATV motorcycle accident two days

---

[1] Plaintiff states in his motion to amend that he is "voluntarily withdrawing 2 prior defendants" – one of which is the City of St. Louis but Plaintiff does not name the other withdrawn defendant. Docs. [19-1] at 2, [19-3] at 1.

[2] Hereinafter, superintendent Adrian Barnes will be referred to as "Barnes" and correctional officer Unknown Barnes will be referred to as "CO Barnes." This appears to be the word choice used by Plaintiff in his amended complaint.

prior. *Id.* at 4, 9. Right after the motorcycle accident, Plaintiff was treated under a different name[3] at St. Clare Hospital for injuries that included shoulder dislocation, road rash, pulled calf muscle, and injuries to his head and neck. *Id.* at 4. Plaintiff was also examined at South City Hospital in a "fit for confinement" exam prior to booking at the SLCJC. *Id.* at 9, 23. At South City, Plaintiff's accident wounds were cleaned and re-dressed, a sling was ordered for his arm, and he was directed to take over-the-counter medications for pain. *Id.* at 10. Upon subsequent medical intake at SLCJC, Plaintiff's arm sling was confiscated because SLCJC "doesn't allow arm slings." *Id.* at 11-12. Upon confiscation of the sling, Plaintiff requested to see a "doctor on an emergency basis" or to be taken to the infirmary, but his requests were denied due to a lack of "life threatening impairment." *Id.* at 11.

Plaintiff states that he was held at SLCJC for eight (8) days in a "'drunk tank' or 'fish tank' style pen[]" that was approximately twenty by eight feet with metal benches on each wall and a toilet at one end. *Id.* at 13. He had no mattress, bedding, clothing, or hygiene items; however, Plaintiff admits to showering twice while held in the tank. *Id.* at 13, 15, 19. Plaintiff repeatedly requested a nurse soon after being put in the tank, but he was told to wait. *Id.* at 14. The "med cart nurse" came by the first evening and noted Plaintiff's complaints but did not provide pain medicine. Plaintiff continued to request medical assistance due to pain over the following days. He was told to wait. *Id.* at 15. As the cell became crowded, especially on Saturday night, Plaintiff made multiple requests to be moved but was denied. *Id.* at 16-17.

Four days after intake, Plaintiff complained to a nurse about his arm wound and ear pain. *Id.* at 17. Plaintiff was brought to medical that day. *Id.* at 18. His arm wounds were cleaned and re-bandaged, but the nurse would not look into Plaintiff's ear pain because she said that he was

---

[3] In a supplemental filing, Plaintiff states that he "entered the hospital under a false name … to gain treatment." Doc. [6] at 4.

- 5 -

only there for a dressing change due to his open wound. *Id.* The nurse instructed Plaintiff to fill out a medical service request regarding his ear. *Id.* at 19. When Plaintiff asked to see a doctor on an "emergency basis," he was told that he did not have a serious concern. *Id.* When Plaintiff repeatedly asked to go to the infirmary, he was told that it was full of "detox inmates and drunks." *Id.* at 20.

On his eighth day at SLCJC, Plaintiff saw defendant Dr. Mallard in medical. *Id.* at 23. He complained about the confiscation of his sling and that he had only received two dressing changes on his arm wounds since intake. *Id.* at 24. Dr. Mallard examined Plaintiff's injuries. Plaintiff received an injectable pain reliever and anti-inflammatory. *Id.* at 25. Dr. Mallard ordered and prepared an arm sling. *Id.* at 26. Upon examination of Plaintiff's right ear, Dr. Mallard noted an obstruction in the ear canal and swelling. *Id.* at 27. Dr. Mallard used pliers to remove an "ear bud" from Plaintiff's ear that he "had been wearing connected to [his] I-pod at the time of the motorcycle crash." *Id.* at 28. Dr. Mallard informed Plaintiff that his ear was infected. She ordered antibiotic ear drops for him and told him to show the med cart nurse his ear every time she came by. Plaintiff was also given over-the-counter pain medications. *Id.*

After Dr. Mallard denied Plaintiff's request to remain in the infirmary, an unnamed female correctional officer escorted Plaintiff back to the tank. *Id.* at 29. On the way back they passed some "suicide observation" cells and the correctional officer commented to Plaintiff about "how comfortable they looked with their blankets and smock and a place to lay down." She then instructed Plaintiff "not to tell her [that he] was suicidal." *Id.* Sometime during the "next shift," Plaintiff alerted correctional officer Jones that he was suicidal. *Id.* at 29-30. Plaintiff was strip searched and his sling was confiscated again. Plaintiff alleges that Jones was verbally abusive towards him. *Id.* at 30. Plaintiff was issued a smock, blanket, and shoes. He was taken to a single observation cell. *Id.* at 31. Plaintiff had to wait two hours to use a restroom and get some water.

A few hours later, he was taken into U.S. Marshals custody and taken to Ste Genevieve County Jail. *Id.*

Plaintiff alleges that SLCJC medical employee defendants failed to provide adequate medical care, delayed his medical treatment, and interfered with his physician-ordered treatment, constituting deliberate indifference. *Id.* at 4. He lists three specific claims for relief in his complaint: (1) a § 1983 claim for deliberate indifference to his medical needs against Hall, CO Barnes, Smith, and other unnamed defendants, in their individual capacities; (2) a *Monell*[4] claim against Barnes, Dr. Mallard, and Hall in their official and individual capacities; and (3) a medical malpractice claim under Missouri statute § 538.210[5] against Dr. Mallard and unnamed nurse defendants. *Id.* at 38-52.

For relief, Plaintiff seeks declaratory relief and damages. *Id.* at 39-40, 48, 53.

### Plaintiff's Relevant Criminal Background

As Plaintiff alluded to in his complaint, there was a question of custody that led to him being held in the SLCJC "drunk tank" for as long as he was. An independent review of Plaintiff's criminal litigation history provides some clarification. Before this Court, Plaintiff Todd Jeude, also known as Todd Juede, pleaded guilty to three drug-related offenses on May 27, 2009. *U.S. v. Juede*, No. 4:09-cr-11-JCH-1, Doc. [44] (E.D. Mo. Jan, 8, 2009). On September 25, 2009, Plaintiff was sentenced to a total term of 86 months, followed by a four (4) year period of supervised release. *Id.* at Doc. [65]. After Plaintiff was released from incarceration, he was arrested for multiple

---

[4] Plaintiff is referring to *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978) – a case in which the United States Supreme Court ruled that a municipality or local governing body can be held directly liable under § 1983. Although Plaintiff names no municipality or local governing body as a defendant, he seems to be arguing a *Monell* claim based on the fact that the official capacity claims against defendants Barnes, Dr. Mallard, and Hall are the "same as holding a municipality liable" because "the real party in interest in an official capacity claim is the gov't entity and not the named individual." Doc. [19-2] at 40 (citing *Robb v. Hungerbeeler*, 370 F.3d 735, 739 (8th Cir. 2004)).

[5] Missouri Revised Statute § 538.210 states "[a] statutory cause of action for damages against a health care provider for personal injury or death arising out of the rendering of or failure to render health care services." Mo. Rev. Stat. § 538.210.1.

supervised release violations. On June 14, 2021, Plaintiff admitted guilt to the violations and was remanded to custody for a period of 12 months and one (1) day. *Id.* at Doc. [113].

Meanwhile in Missouri state court, Plaintiff was charged in November 2016 with four criminal counts involving drugs, motor vehicle tampering, and unlawful weapon possession. *State v. Jeude*, No. 16SL-CR07616-01 (22nd Jud. Cir. 2016). He pleaded guilty to the charges of unlawful possession of a weapon and tampering in May of 2017. He received 7-year sentences on each count, to run concurrent with each other "and any federal sentences." Sometime around May 2021, Plaintiff was released on parole.

In April 2022, Plaintiff was declared an escape from the halfway house where he had been placed and as a result, a federal indictment charged him with escape from custody. *U.S. v. Jeude*, No. 4:22-cr-239-RWS-1 (E.D. Mo. Apr. 27, 2022). Around that same time, Plaintiff was declared an absconder on his state court charges as well, and a warrant was issued. As mentioned above, on July 6, 2022, Plaintiff was arrested by the St. Louis City police on charges of tampering, possession of a controlled substance, and possession of drug paraphernalia. It appears that there was some confusion as to who would take custody of Plaintiff after his arrest, given he had state and federal charges pending. Eventually, the USMS took custody of Plaintiff on July 14, 2022, and he appeared before this Court that day for an initial appearance. *Id.* at Doc. [7].

## Discussion

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Having carefully reviewed and liberally construed Plaintiff's allegations, the Court finds that Plaintiff fails to demonstrate that any of the named defendants behaved with deliberate indifference to his health or safety. Based on prevailing Eighth Circuit precedent, Plaintiff's

allegations fail to state a § 1983 claim upon which relief may be granted. For the reasons discussed below, this case will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

## I.     Deliberately Indifferent Medical Care

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of, and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)). To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects. *Id.* at 1119-20*; see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

In this case, Plaintiff alleges that Hall, CO Barnes, Smith, and an indeterminate number of Doe defendants failed to provide him with adequate medical care, delayed his medical treatment, and interfered with his physician-ordered treatment, constituting deliberate indifference. According to Plaintiff, medical treatment was denied for eight (8)[6] days. However, Plaintiff admits that he received two dressing changes for the wound on his arm during that 8-day period. He also saw and talked with a med cart nurse multiple times during that period.

"The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). The allegations of the amended complaint demonstrate that Plaintiff's medical condition was monitored and reviewed by numerous Defendants over the 8-day period. Plaintiff received a fit-for-confinement exam at a local hospital before intake. He had multiple dressing changes and saw

---

[6] Plaintiff states differing lengths of time in his amended complaint. At one point he alleges a ten (10) day denial of care, Doc. [19-2] at 39; but he also states that he was detained at SLCJC on July 6th (after a hospital fit-for-confinement exam) and he saw Dr. Mallard for care on July 14th. *Id.* at 9, 23. Liberally construing the amended complaint, it appears the maximum period of alleged denial of care would be eight (8) days.

the med cart nurse numerous times. Plaintiff's allegations do not demonstrate intentional maltreatment or a refusal to provide essential care.

Plaintiff's claim of a deliberately indifferent delay in medical treatment also fails. Plaintiff seems to assert a delay involving both a failure to discover and remove the obstruction in his ear canal and involving the confiscation of his arm sling. Plaintiff's injuries from the motorcycle accident were examined at two hospitals before he was detained at SLCJC. Neither of those examinations revealed an ear obstruction. Defendants at SLCJC had no actual knowledge of a risk to Plaintiff's health from a potential ear obstruction. Furthermore, Plaintiff alleges no detrimental effect from the delay in discovering the ear obstruction. As stated above, allegations of mere negligence in giving or failing to supply medical treatment are not enough to state a claim of deliberate indifference. *Estelle*, 429 U.S. at 106.

Plaintiff also states that his arm sling was confiscated by SLCJC employees for safety reasons multiple times, but that he was eventually issued an arm sling once he was moved to Ste Genevieve Jail. Plaintiff's sling was confiscated before he was placed in a crowded holding cell and before he was placed in a suicide observation cell. Plaintiff alleges the confiscations interfered with his physician-ordered treatment.

A prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*; *see also Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) (stating that "prison administrators are accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))).

Understandably, a sling would be a safety concern in both a crowded cell and during suicide observation. Furthermore, Plaintiff does not allege any detrimental effect from a delay in receiving his sling. When Dr. Mallard examined him multiple days after the sling confiscation, she found no shoulder dislocation. Plaintiff alleges no aggravation of his medical condition or long-term side effect resulting from the lack of sling.

Finally, a delay as brief and as non-detrimental as Plaintiff alleges does not state a claim for deliberate indifference to his serious medical needs. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (finding that a prisoner's claim for delay of one month between complaint of leg pain and visit with doctor was insufficient to state a constitutional claim absent allegations the condition required immediate attention or the delay in treatment aggravated the condition).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). There is no evidence that defendants knew of and deliberately disregarded a known risk to Plaintiff's health. The allegations of the amended complaint are insufficient to support a deliberate indifference medical care claim.

**II.     Conditions of Confinement Claim**

Although not specifically stated in his legal claims section of his amended complaint, Plaintiff also appears to be asserting a conditions of confinement claim. Plaintiff alleges an approximate 8-day period without bedding, a change of clothing, and hygiene items. However, he also admits that he was able to shower twice during the 8-day period.

To establish a conditions of confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). With respect to the "civilized measure of life's necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 832).

Pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). Prison "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). As such, "a long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (citing *Howard*, 887 F.2d at 137 (finding a two-year internment in a cell covered in human waste, with a torn and dirty mattress, lack of proper cleaning supplies, and denial of laundry and barber privileges violated the Eighth Amendment)). However, there is no absolute Eight Amendment right not to be put in a cell without clothing or bedding. *Williams v. Delo*, 49 F.3d 442, 444-46 (8th Cir. 1995) (finding no Eighth Amendment violation where prisoner held in strip cell without clothing, running water, mattress, or hygiene supplies for four days). The length of time an inmate spends in such a condition is a factor in determining whether there has been a constitutional violation.

Although Plaintiff requested a cell change multiple times, it is well established that Plaintiff has no constitutional right to his choice of cell. *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984).

During the 8-day period at issue, Plaintiff was not denied clothing, food, shelter, or, as discussed above, medical care. He does not allege his clothing was inadequate or that not being able to change resulted in any injury. Also, he was able to shower multiple times. This short period of time, under the alleged conditions, did not result in a denial of the minimal civilized measure of life's necessities. *See O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th Cir. 1996) (finding that several days without underwear, blankets, mattress, exercise or visitation did not violate the Eighth Amendment); *see also Scott v. Carpenter*, 24 F. App'x 645, 647-48 (8th Cir. 2001) (finding no denial of "minimal civilized measure of life's necessities" when prisoner was able to shower only fifteen times in six months including a twenty-eight-day period without a shower). Plaintiff's allegations fail to allege a sufficient Eighth Amendment conditions of confinement claim and will be dismissed.

### III.  Other Claims

First, to the extent that Plaintiff is attempting to assert a *Monell* claim even though he names no municipality or local governing body as a defendant, such a claim fails. In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local governing body can be directly liable under § 1983. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Here, Plaintiff alleges no official policy, unofficial custom, or deliberately indifferent failure to train or supervise. In addition, because Plaintiff fails to state a claim of a constitutional violation against any named individual defendant, his § 1983 *Monell* claim also fails. *See Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (finding no violation by the defendant officer of Plaintiff's rights, "there can be no § 1983 or *Monell* liability on the part of … the City."); *Sitzes v.*

*City of W. Memphis*, 606 F.3d 461, 470 (8th Cir. 2010) (agreeing with district court that plaintiffs' claims "could not be sustained absent an underlying constitutional violation by the officer").

Second, Plaintiff also complains about verbal abuse and name calling by defendants at SLCJC. This is not enough to state a claim under § 1983. The Constitution does not guard against all intrusions on one's peace of mind. *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King*, 117 F.3d at 1067 (citations omitted).

Here, Plaintiff alleges a few instances of a verbal threat, with no allegations of brutality, wanton cruelty, or coercive pressure. Such allegations do not state a claim of constitutional dimension. *See Williams v. Harness*, 221 F.3d 1346 (8th Cir. 2000) (citing *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983)); *McDowell*, 990 F.2d at 434 (affirming district court dismissal of allegations of general harassment and of verbal harassment for failure to state a claim).

Finally, Plaintiff's claims of medical malpractice under Missouri state law will also be dismissed. As discussed above, such claims fail to state a § 1983 claims. *See Kulkay*, 847 F.3d at 643 (finding that mere negligence or inadvertence does not rise to the level of deliberate indifference); *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable under the Eighth Amendment); *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983"). In addition, because Plaintiff's federal claims will be dismissed, all remaining pendent state claims

will be dismissed, as well.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (where federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a matter of discretion).

**Conclusion**

The allegations of Plaintiff's amended complaint fail to state a § 1983 claim of cruel and unusual punishment under the Eighth Amendment for both deliberately indifferent medical care and denial of the minimal necessities of life.  Furthermore, this Court declines to exercise jurisdiction over any remaining state claims.  As such, this case will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis*, Doc. [2], is **GRANTED.**  *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $30.00 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend, Doc [19], is **GRANTED**. The Clerk of Court is directed to docket the amended complaint, Doc. [19-2], separately in this matter.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to all named defendants because the complaint fails to state a claim

upon which relief can be granted. Plaintiff's claims against all defendants are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel, Doc. [4], is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 27th day of January, 2023.

                                            MATTHEW T. SCHELP
                                            UNITED STATES DISTRICT JUDGE